IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES REICHERT and MARY REICHERT, his wife,<br>   Plaintiffs,<br><br>   v.<br><br>BILL JOHNSON d/b/a LAKE SHORE BUILDERS, et al.,<br>   Defendants. | C.A. No. 23-227 Erie<br><br>District Judge Susan Paradise Baxter |

# MEMORANDUM OPINION

## I.  INTRODUCTION

### A.  Relevant Procedural History

Plaintiffs James Reichert and Mary Reichert, his wife, initiated this action in the Court of Common Pleas of Erie County, Pennsylvania, by filing a complaint against Defendants Bill Johnson d/b/a Lake Shore Builders ("Johnson"), Commercial Distribution Specialists, Inc. d/b/a B&L Wholesale Supply ("B&L"), and Sivak Stonemasonry LLC ("Sivak"), asserting multiple claims arising from the allegedly faulty construction of Plaintiffs' new home at 2045 Elk Creek Road, Waterford, Pennsylvania ("Subject Property"). The action was removed to this Court pursuant to a Notice of Removal filed by Defendant B&L on August 9, 2023 [ECF No. 1].

Plaintiffs subsequently filed an amended complaint on October 6, 2023, against the same three Defendants, except that the full name of Defendant B&L was changed to SRS Distribution, Inc. d/b/a B&L Wholesale Supply [ECF No. 24]. The amended complaint contains nine counts:

  Count I – Violation of the Unfair Trade Practices and Consumer Protection Law, 73 Pa. C.S. §§ 201-1, *et seq*, v. Defendant Johnson;

  Count II – Breach of Contract v. Defendant Johnson;

1

      Count III – Breach of Implied Warranty of Habitability v. Defendants Johnson and Sivak;

      Count IV – Breach of Implied Warranty of Workmanship v. Defendants Johnson and Sivak;

      Count V -- Negligence v. Defendants Johnson and Sivak;

      Count VI - Promissory Estoppel v. Defendant B&L;

      Count VII – Breach of Contract v. Defendant B&L;

      Count VII (sic) – Negligence v. Defendant B&L; and

      Count VIII (sic) – Negligent Misrepresentation v. Defendant B&L.

On October 19, 2023, Defendant B&L filed a motion to dismiss all of Plaintiff's claims against it [Counts VI, VII, VII(sic), and VIII(sic)] for failure to state a claim upon which relief may be granted [ECF No. 27]. Plaintiffs have filed a brief in opposition to B&L's motion [ECF No. 31], and B&L has filed a reply memorandum of law [ECF No. 34]. This matter is now ripe for consideration.

**B.**    **Plaintiffs' Allegations**[1]

On December 28, 2020, Plaintiffs entered into a contract with Johnson for the construction of the Subject Property. (ECF No. 24, at ¶ 6). Prior to the commencement of construction, Plaintiffs researched various window manufacturers and settled upon Marvin Windows. (Id. at ¶ 86). Plaintiffs met with Charlie Lacki ("Lacki"), an employee of B&L, to discuss their desire to purchase Marvin Windows. (Id. at ¶ 87). Lacki represented that he was familiar with Marvin Windows and was knowledgeable about how they should be installed properly. (Id. at ¶ 88). Lacki promised Plaintiffs multiple times that he would be present on site to ensure that the windows were properly installed by Johnson. (Id. at ¶ 89). Lacki also promised

---

[1] The factual history recited herein is largely limited to Plaintiffs' allegations against Defendant B&L only, which are assumed to be true for purposes of determining Defendant B&L's motion.

that he would follow up after installation to make sure the windows were taped and "protected" properly. (Id. at ¶ 90). Based upon these promises. Plaintiffs agreed to purchase the Marvin Window package from B&L for the construction project. (Id. at ¶ 91). Plaintiffs allege that they would not have purchased the Marvin Windows from B&L without the assurances they received from Lacki. (Id. at ¶ 92).

Lacki subsequently went to the job site and provided the Marvin Window installation instructions to Johnson. (Id. at ¶ 93). Lacki was onsite on multiple occasions and, upon Plaintiffs' information and belief, observed the installation of the windows at the Subject Property. (Id. at ¶¶ 94-95). Nonetheless, the windows were installed without the proper flashing, which caused water to infiltrate the Subject Property. (Id. at ¶¶ 98, 113). Lacki knew or should have known that Johnson was failing to follow the Marvin instructions properly, yet failed to alert Plaintiffs of Johnson's failings, and failed to stop Johnson from continuing to make the same mistakes with each window he installed. (Id. at ¶¶ 118-120).

## II. DISCUSSION

### A. Count VI - Promissory Estoppel

Pennsylvania has adopted the Restatement view of promissory estoppel. As the Pennsylvania Supreme Court has explained:

> [U]nder the doctrine of promissory estoppel ... "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

Thatcher's Drug Store of West Goshen, Inc. v. Consolidated Supermarkets, Inc., 636 A.2d 156, 160 (Pa. 1994), quoting Restatement (Second) Contract § 90(1). "Generally, promissory estoppel is designed to prevent the injustice that results when a promisee is reasonably induced by, and

3

relies upon, some promise by a promisor that is broken." C & K Petroleum Prods., Inc. v. Equibank, 839 F.2d 188, 191 (3d Cir. 1988).

The elements of promissory estoppel under Pennsylvania law are: "(1) the promisor made a promise that he or she could have reasonably expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; (3) injustice can be avoided only by enforcing the promise." Edwards v. Wyatt, 335 F.3d 261, 277 (3d Cir. 2003), quoting Crouse v. Cyclops Indus., 745 A.2d 606, 610 (Pa. 2000).

Here, Plaintiffs allege, *inter alia*, that: (1) B&L, through its employee Lacki, "promised numerous times" that if Plaintiffs purchased the Marvin Windows from B&L, "Lacki would be on site to make sure [Johnson] installed the windows according to Marvin's instructions" (ECF No. 24, at ¶ 253); (2) "B&L knew or should have known that its representations and promises would induce [Plaintiffs] to purchase the Marvin Windows from B&L" (Id. at ¶ 255); (3) Plaintiffs relied upon B&L's representations and promises when they paid B&L $74,991 for the Marvin Windows and accessories" (Id. at ¶ 256); (4) B&L failed to fulfill its promises when Lacki "either failed to detect the numerous mistakes made by [Johnson] … and/or failed to stop [Johnson] from making these mistakes in a timely manner so as to avoid the expensive process of correcting those mistakes" (Id. at ¶ 258); and (5) "[u]nder the circumstances, an injustice to [Plaintiffs] can only be avoided by enforcing the promises made by B&L and requiring it to pay damages for breach of those promises" (Id. at ¶ 259). On their face, these allegations sufficiently state a cause of action for promissory estoppel.

Nonetheless, B&L argues that this claim must be dismissed because all of B&L's promises were subsumed under the terms of a written contract; namely, the "Reichert Waterford

4

Proposal" (the "Proposal") between B&L and Plaintiffs pursuant to which Plaintiffs purchased the windows and doors selected for the construction project. [ECF No. 27, at pp. 7-9; ECF No. 27-2, at pp. 46-109]. Specifically, Defendant contends that "[t]here are no line items in the proposal delineating any obligation to perform installation or supervision of the window installation; rather, this was a straight-forward sale of goods." (ECF No. 27, at p. 7). Thus, according to Defendant, because an enforceable contract exists between the parties that allegedly memorializes all the terms of their agreement, Plaintiffs' promissory estoppel claim must fail.

In support of its argument, B&L cites the case of Iverson Baking Co., Inc. v. Weston Foods, Ltd., 874 F. Supp. 96 (E.D. Pa. 1995), in which the court noted that "[p]romissory estoppel is an equitable remedy to be implemented only when there is no contract; it is not designed to protect parties who do not adequately memorialize their contracts in writing." Id. at 102. However, B&L fails to note that Iverson was decided at the summary judgment stage, only after the Court determined that an enforceable contract memorializing all of the parties' terms existed. Indeed, before making the pronouncement cited by B&L, the court noted that "Courts have held that breach of contract and promissory estoppel may be pleaded in the alternative, but that **if the court finds that a contract exists**, the promissory estoppel claim must fall. Id. (emphasis added).

Courts have uniformly held that promissory estoppel may be asserted as a valid alternative theory of relief to a breach of contract claim at the pleading stage. See, e.g., Cornell Co., Inc. v. Borough of New Morgan, 512 F. Supp. 2d 238, 266 n.19 (E.D. Pa. 2007), quoting Comcast Spectacor L.P. v. Chubb & Son, Inc., 2006 WL 2302686, at *23 (E.D. Pa. Aug. 8, 2006) ("'Promissory estoppel … may be pled in the alternative to a breach of contract claim, although the finding of a valid contract would prevent a party from recovering for either quasi-

contractual theory'"); TAKTL, LLC v. IWR North America, LLC, 2020 WL 5802994, at *3 (W.D. Pa. Aug. 20, 2020) ("It is proper for Defendants to plead a claim for promissory estoppel as an alternative to its breach of contract claims, especially as when here the validity and terms of the contract have not been determined, and it would be premature to dismiss this claim at this procedural juncture"). Thus, B&L's motion to dismiss this claim will be denied as premature at the pleading stage.

### B.   Count VII - Breach of Contract

Plaintiff alleges that Lacki's representations on behalf of B&L are a material part of the contract between the parties, and that B&L breached the contract due to Lacki's failure to act in accordance with his representations by failing to: (1) "detect the numerous mistakes made by [Johnson]; (2) "stop or otherwise correct [Johnson] from making those mistakes in a timely manner;" and/or (3) "notify [Plaintiffs] of the mistakes that were being made in a timely manner." (ECF No. 24, at ¶¶ 276-277).

B&L seeks dismissal of this claim arguing that "the parties' agreement was fully incorporated in [the Proposal]," which does not include Lacki's oral representations regarding B&L's "supposed obligation to supervise the installation the windows." (ECF No. 27 at p. 10). In essence, B&L is invoking the parol evidence rule, which bars evidence of prior oral representations concerning matters covered in a fully integrated agreement. "Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract." SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 212-13 (3d Cir. 2022), quoting Yocca v. Pitts. Steelers Sports, Inc., 854 A.2d 425, 436–37 (Pa. 2004). Thus, for the parol evidence rule to

apply, there must be a writing that represents the "entire contract between the parties." Yocca, 854 A.2d at 436 (citation omitted).

"To determine whether or not a writing is the parties' entire contract, the writing must be looked at and if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the [parties'] engagement, it is conclusively presumed that [the writing represents] the whole engagement of the parties...." Id. (internal quotation and citation omitted). An integration clause that states that a writing is meant to represent the parties' entire agreement is "a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution." Id. (citations omitted); see also SodexoMAGIC, 24 F.4th at 213 (An integration clause "typically states that the contract contains the final expression of all the terms of the parties' agreement and that it supersedes all prior agreements on the subject matter"). Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract. Id., citing Bardwell v. Willis Co., 100 A.2d 102, 104 (Pa. 1953).

Here, Plaintiffs correctly observe that the Proposal does not contain an integration clause; however, the absence of an integration clause "does not automatically subject the written agreement to parol evidence." Kehr Packages, Inc. v. Fidelity Bank, N.A., 710 A.2d 1169, 1173 (Pa. Super. 1998), citing International Milling Co. v. Hachmeister Inc., 110 A.2d 186, 191 (Pa. 1955). "Rather, in the absence of an integration clause, the court must examine the text [of the agreement] to determine its completeness." Id. (internal quotation and citation omitted).

7

Here, the Proposal is a thirty-one (31) page document entirely devoted to a detailed listing of the prices, quantities, drawings and specifications of the windows and doors that were selected for the construction of the Subject Property. [ECF No. 24-3]. The last page of the proposal contains the total price for the products to be purchased and was signed by Plaintiff Mary Reichert, evidencing her agreement to the specifications and pricing of the products and her approval of the order. (Id. at p. 31). Notably, however, the line immediately above the signature line also states, in pertinent part, "I acknowledge that additional charges, tax or Terms and Conditions may apply." (Id.). The presence of this language suggests that the parties did not intend for the Proposal to be a full and final expression of all terms of their agreement.

Thus, the Court finds that Plaintiffs' breach of contract claim based on Lacki's oral representations is not barred by the parol evidence rule and will be allowed to proceed beyond the pleading stage.

### C.  Count VII (sic) – Negligence

Plaintiffs claim that Lacki breached a societal duty owed to Plaintiffs by failing to stop or correct [Johnson's] mistakes in a timely manner, and/or to notify Plaintiffs of the mistakes in a timely manner, thus causing Plaintiffs to suffer undue damages as a result. B&L argues that this claim must be dismissed under the "gist of the action" doctrine.

Under Pennsylvania law, "the gist of the action doctrine provides that a tort claim 'based on [a] party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action ... although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations.'" Downs v. Andrews, 639 F. App'x 816, 819 (3d Cir. 2016), quoting Bruno v. Erie Ins. Co., 106 A.3d 48, 53 (Pa. 2014). To evaluate whether the gist of the action doctrine applies, a court must identify the duty breached,

because "the nature of the duty alleged to have been breached ... [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract." Bruno, 106 A.3d at 68. "In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort ... is not controlling." Id.

In eToll Inc. v. Elias/Savion Adv. Inc., 811 A.2d 10 (Pa.Super.2002), the Pennsylvania Superior Court explained the sometimes blurred distinction: "Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." Id. at 14. The Court then offered examples, noting that other courts have held that the gist of the action doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract. eToll, 811 A.2d at 19 (internal citations and quotations omitted).

Here, Plaintiffs argue that none of the above four examples are applicable here. Instead, Plaintiffs contend that their negligence claim "exists independently and regardless" of its contractual claim because it "stems from [Lacki's] societal duty to say something when he saw (or should have seen) completely unacceptable window installation by [Johnson]." (ECF No. 31, at p. 16). In particular, Plaintiffs allege that Lacki: (1)"was present during window installation and/or after windows ha[d] been installed;" (2) "had the opportunity to see for himself the faulty workmanship of [Johnson];" (3) "knew or should have known that [Johnson] was failing to follow the Marvin instructions;" (4) "failed to alert the Plaintiffs of the failings of [Johnson] with

9

respect to the Marvin Windows;" and (5) "failed to stop [Johnson] from continuing to make the same mistakes with each window he installed." (ECF No. 24, at ¶¶ 116-119). Thus, in essence, Plaintiffs' negligence claim is based upon Lacki's alleged "societal" duty of care to protect Plaintiffs from the conduct of a third party (Johnson). Such a claim cannot stand.

"It is hornbook law that recovery in a negligence claim is not available unless the defendant owes a duty of care to the plaintiff and, as a basic principle, there is no duty to guard against third-party conduct." County Mutual Ins. Co. v. Yocum, 2019 WL 2568031, at *2 (E.D. Pa. June 21, 2019) (internal quotation omitted), citing Brisibine v. Outside In School of Experiential Education, Inc., 799 A.2d 89, 93 (Pa. Super 2002) (stating that, in general, there is no duty to guard against third-party conduct). The only exception to this generally recognized principle is if a custodial, or special relationship, exists between the defendant and the third party. Id., citing Brezenski v. World Truck Transfer, Inc., 755 A.2d 36, 40 (Pa. Super. 2000); Restatement (Second) of Torts § 315 (1965) (stating there is no duty to protect against third-party harm unless a special relationship exists that imposes a duty upon the individual to control the third person's conduct). A special relationship is limited to the relationships described in Sections 316-319 of the Restatement (Second) of Torts. See Brezenski, 755 A.2d at 40-41. The enumerated relationships specified in the Restatement are a parent's duty to control a child (Section 316); a master's duty to control a servant (Section 317); a possessor of land's duty to control a licensee (Section 318); and the duty of those in charge of individuals with dangerous propensities to control those individuals (Section 319). Brisibine, 799 A.2d at 93.

None of the foregoing special relationships exist between Lacki and Johnson. Thus, Lacki had no recognized "societal" duty to protect Plaintiffs from harm caused by Johnson's conduct. The only conceivable duty upon which Plaintiff's purported negligence claim may be based

arises from the contract between the parties. As such, Plaintiffs' negligence claim is barred by the "gist of the action" doctrine and will be dismissed accordingly.

### D. Count VIII (sic) – Negligent Misrepresentation

Under Pennsylvania law, a claim of negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. Bortz v. Noon, 729 A.2d 555, 561 (Pa. 1999).

Here, Plaintiffs allege that Lacki: (1) made representations about B&L's knowledge of the proper methods of installing Marvin Windows and that he would be on site to make sure the windows were installed according to Marvin's instructions; (2) B&L, through Lacki, should have known that its representations were false because Lacki either did not have knowledge regarding the proper installation of Marvin windows or he did not intend to monitor the installation of the windows as represented, or both; (3) B&L, through Lacki, knew or should have known that Plaintiffs would rely on these representations; and (4) Plaintiffs justifiably relied on Lacki's representations when they purchased the Marvin Window package and incurred damages as a result. (ECF No. 24, at ¶¶ 289-297). On their face, these allegations state a plausible claim of negligent misrepresentation.

Nonetheless, B&L moves to dismiss the claim asserting that Plaintiffs cannot show that they justifiably relied on Lacki's alleged representations. In particular, Defendant notes that, by the time Plaintiffs met with B&L to discuss the purchase of the Marvin Window package in early February 2021, the Proposal had already been prepared and modified five different times over

11

the course of the preceding year;[2] yet, "not once did [Plaintiffs] request the addition of provisions related to monitoring and supervising, despite now claiming those terms were essential." (ECF No. 27, at p. 12). Consequently, B&L argues that Plaintiffs "were not justified in relying on terms they themselves knew had never been codified in the Proposal." (Id.).

No matter how cogent B&L's argument may appear, the Third Circuit has "stress[ed], as have the Pennsylvania courts, that the issue of whether reliance on a representation is reasonable (or justifiable) is generally a question of fact that should be presented to the jury." Tran v. Metropolitan Life Ins. Co., 408 F.3d 130, 139 (3d Cir. 2005), citing Silverman v. Bell Savings & Loan Ass'n, 533 A.2d 110, 115 (Pa. Super. 1987), appeal denied 542 A.2d 1371 (Pa. 1988) ("[t]he right to rely upon a representation is generally held to be a question of fact"). See also Myers v. McHenry, 580 A.2d 860, 865 (Pa. Super. 1990) ("[t]he question of whether a party's reliance upon a representation was justifiable is one that should be decided by a jury on the basis of all the facts and permissible inferences which may be drawn from the evidence presented at trial"). Thus, B&L's motion to dismiss Plaintiffs' negligent misrepresentation claim based on Plaintiffs' lack of justifiable reliance is premature at this early stage of the proceeding and will be denied.

An appropriate Order follows.

---

[2] Defendant points out that the Proposal was originally prepared on January 21, 2020, and was subsequently modified on March 12, 2020, June 18, 2020, January 26, 2021, January 27, 2021, and February 2, 2021. (ECF No. 27, at p. 12).